IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| NEIL MCHUGH,<br><br>      Plaintiff,<br><br>vs.<br><br>THE TOWN OF MARANA, a municipal corporation, and the MARANA TOWN COUNCIL, duly elected officials of the Town of Marana,<br><br>      Defendants. | No. CV 04-680–TUC-DCB (BPV<br><br>**REPORT AND RECOMMENDATION** |

      Defendant Town of Marana, brings this motion for summary judgment, pursuant to Rule 56, Federal Rules of Civil Procedure, for the entry of summary judgment in favor of Defendants.

      On March 30, 2005, this case was referred to Magistrate Judge Velasco for all pretrial proceedings and report and recommendation. On August 11, 2005, the Magistrate Judge heard argument on Defendant Town of Marana's Motion for Summary Judgment (Document #14). For reasons which follow, the Magistrate Judge recommends that the District Court, after its independent review, grant Defendant Town of Marana's Motion for Summary Judgment.

### PROCEDURAL BACKGROUND

      Plaintiff Neil McHugh filed the Complaint in this case, alleging that Defendants' actions violated his due process rights granted by the United States Constitution and the Constitution of the State of Arizona, and were in violation of 42 U.S.C. § 1983.

1   On April 6, 2005, Defendant Town of Marana ("Marana") filed a Motion for Summary Judgment supported by a separate statement of facts. McHugh filed an opposition to the motion supported by a separate statement of facts. Marana filed no reply, but did file a supplemental statement of facts. On July 6, 2005, Marana filed a notice of new case citation supplementing its motion.

**STATEMENT OF FACTS**

In late fall of 2003, Plaintiff, and other persons who own property in the area of Cortaro Farms Road, began to be contacted by representatives of a private developer regarding the proposed annexation of their property into the Town of Marana.

Plaintiff soon learned that the annexation was being done in connection with the rezoning and development of portions of this property for single family residences and commercial developments. Plaintiff was opposed to the proposed annexation.

The annexation process began when the Town of Marana filed their blank annexation petitions with the Pima County Recorders Office on November 26, 2003.

On December 8, 2003, Plaintiff McHugh received a letter from the Town of Marana stating that his property was to be included in what had come to be known as the Camino de Oeste Annexation. Two days later, Plaintiff McHugh received a letter from Dick Gear, of the Town of Marana, stating that his inclusion in the proposed annexation area was incorrect.

On March 16, 2004, the Mayor and Council of the Town of Marana, Arizona, passed and adopted Marana Ordinance 2004.5 pertaining to the annexation of approximately three hundred and nineteen (319) acres of land adjacent to Marana's boundaries.[1] Simultaneously, through Ordinance 2004.5, Marana changed the zoning

---

[1] Some of the facts in this case are in dispute. Where there is no dispute as to the facts, no citation will be made. Where the facts are in dispute, they will be so noted, and reference to the appropriate party's statement of facts will be made.

-2-

1  classification (Pima County Zones Suburban Ranch and Suburban Homestead) of the
2  property prior to annexation to the equivalent zoning classification within Marana.

3       On March 31, 2004, the Town of Marana Planning and Zoning Commission held
4  a hearing on the proposed rezoning of the area that was included in the annexation
5  process. During the course of this hearing it became known that the private developer
6  who was pursuing the annexation was offering financial incentives, including $700,000
7  towards the redevelopment of Cortaro Farms Road. Also during that hearing, one of
8  the private developers asked the panel to overlook deficiencies in their redevelopment
9  application in light of the fact that they would be contributing over two million dollars
10 to the town during the course of the annexation and redevelopment. One member of the
11 Planning and Zoning Council indicated that it was his perception that private developers
12 were "leading the planning effort," and that "the planning, the vision of the Town is
13 coming more from the developers than it is from the Town." The proposal to rezone
14 the area to be annexed was approved.

15       Plaintiff, present at the March 31, 2004 hearing, was of the clear belief that the
16 financial contributions to be made by the private developers insured that their proposal
17 was going to be approved despite public opposition.

18       On April 15, 2004, Plaintiff McHugh and others filed a complaint in the Pima
19 County Superior Court in and for the State of Arizona against Marana to have
20 invalidated what has been called the "Camino de Oeste Annexation," which was
21 adopted by Ordinance No. 2004.5.

22       In the face of opposition from numerous speakers, Marana passed and adopted
23 Resolution No. 2004.7 on April 20, 2004, which allowed the Mayor to execute the
24 Willow Ridge Development Agreement, pertaining to the rezoning of 104.6 acres
25 within the area previously annexed by Ordinance 2004.5.

26       On or about April 26, 2004, more than one month after the date the annexation
27 was approved, the Mayor and certain landowners with property located within the

-3-

1 annexation area executed the Development Agreement. The only testimony which was
2 presented to the Council in support of the rezoning was by the Marana Town Attorney
3 and primarily involved the amount of money that the redevelopment would bring to the
4 Town. Plaintiff McHugh was present during this presentation, and clearly got the sense
5 that the money that was offered to the Town was the factor that brought on the quick
6 approval of the redevelopment of the annexed area.

7 On August 4, 2004, the Hon. Richard S. Fields entered judgment for Marana and
8 upheld the validity of Ordinance 2004.5. Plaintiff McHugh filed a Notice of Appeal
9 with the Court of Appeals, Division Two, in and for the State of Arizona on August 17,
10 2004.

## DISCUSSION

12 Summary judgment is available "if the pleadings, depositions, answers to
13 interrogatories and admission on file, together with the affidavits, if any, show that
14 there is no genuine issue as to any material fact and the moving party is entitled to
15 judgment as a matter of law." *See* Fed.R.Civ.P. Rule 56(c). The party seeking
16 summary judgment carries the burden of showing there is no genuine issue of material
17 fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), cert denied, 484 U.S.
18 1066 (1988). Once the moving party has met that burden by presenting evidence
19 which, if uncontradicted, would entitle it to a directed verdict at trial, the burden shifts
20 to the nonmoving party to present specific facts showing that such contradiction is
21 possible. *See* Fed.R.Civ.P. 56(e); *British Airways Bd. v. Boeing Co.*, 585 F.2d 946,
22 950-52 (9th. Cir 1978), cert. denied, 440 U.S. 981 (1979).

23 When judging the evidence at the summary judgment state, a court is not to
24 make credibility determinations or weigh conflicting evidence but is required to view
25 all inferences in the light most favorable to the non-moving party. *See Musick v. Burke*,
26 913 F.2d 1390, 1394 (9th Cir. 1990). The ultimate question is whether the evidence
27 "presents a sufficient disagreement to require submission to a jury or whether it is so

28
-4-

1  one-sided that one party must prevail as a matter of law." *See Anderson v. Liberty*
2  *Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The mere existence of a scintilla of evidence
3  supporting the non-movant's position will be insufficient; there must be evidence from
4  which the jury could reasonably find for the non-movant. *See id.*, at 252.

5       With these standards firmly in mind, the Magistrate Judge turns to the merits of
6  Plaintiff's claims.

Defendant's Position

9       Defendant asserts that Plaintiff's takings claim fails because Plaintiff has not
10 alleged a legitimate claim of entitlement to County zoning instead of the Town zoning
11 that he became subject to once the property was annexed.

12      Defendant argues that Plaintiff may not assert a due process claim against the
13 Town because a plaintiff is precluded from asserting a due process claim instead of, or
14 in addition to, a takings claim.

15      Defendant asserts that Plaintiff is barred from bringing an action for a taking in
16 federal court because he has not alleged any facts that indicate he has been denied the
17 use of his property, and, additionally, because he has not first sought relief in state court
18 through in inverse eminent domain action.

19      Finally, Defendant argues that allegations as to the motivations of the Town
20 council members in adopting the annexation ordinance are not proper matters for this
21 court.

Plaintiff's Position

23      Plaintiff asserts that he has presented evidence that supports his contention that
24 the decision to approve the annexation and rezoning was influenced by financial
25 contributions from private developers, and that this influence denied him his procedural
26 due process rights to meaningfully participate in the process leading up to the
27 annexation.

1   Plaintiff also asserts that he challenged the validity of the annexation in the only
2 manner permitted him by law.  Further, Plaintiff asserts that the two prong test set for
3 setting forth a taking's claim has been satisfied.  First, the Town Council's vote in favor
4 of the annexation and rezoning of the property is a final decision, satisfying the first
5 prong.  Second, Plaintiff asserts that while an inverse eminent domain action may
6 satisfy the second prong, it is not the only state procedure that would satisfy the test.
7 Plaintiff claim that his attempt to challenge the validity of the annexation also satisfies
8 the test.

9 Legal Analysis

10   **Procedural Due Process Claim**

11   Ordinarily, due process of law requires notice and an opportunity for some kind
12 of hearing prior to the deprivation of a significant property interest, however, in some
13 situations, due process is satisfied when the legislative body performs its
14 responsibilities in the normal manner prescribed by law.  *Halverson v. Skagit County*,
15 42 F.3d 1257 (9th Cir. 1994).  In this instance, as there is no issue Plaintiff received
16 notice of the hearing and a chance to be heard, this Court need not decide what notice
17 and hearing requirements were due in this instance.

18   Property rights must be based on legitimate claims of entitlement.  *Kerley*
19 *Industries, Inc. v. Pima County*, 785 F.2d 1444 (9th Cir. 1986) (citing *Board of Regents*
20 *v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972).  Defendants having raised this
21 issue of entitlement, Plaintiffs have not countered with evidence or argument that they
22 have a legitimate claim of entitlement to a particular form of zoning.  This distinction
23 seems especially critical in this instance when Plaintiff has not shown an economical
24 devaluation of his property.

25   In *Buckles v. King County*, 191 F.3d 1127, the Ninth Circuit dismissed the
26 plaintiff's procedural due process claim because it was lacking in two respects.  First,
27 the plaintiffs did not submit any evidence that supported the plaintiff's conclusory
28

-6-

1 assertion of partiality.  Second, the plaintiff did not show that they had a "legitimate
2 claim of entitlement" to the zoning they desired created by "an independent source such
3 as state law."

4 Plaintiff argues that the instant matter is unlike *Buckles* because the Plaintiff in
5 this case has submitted evidence that supports his contention that the decision to
6 approve the annexation and rezoning was influenced by financial contributions from
7 private developers.

8 In this case, the basis of Plaintiff's claims that the town council is acting
9 impartially is that the town council met with developers prior to the public hearings and
10 took the towns financial interests into consideration in its decision making.  Plaintiff has
11 not made any claim that council members themselves benefitted personally or
12 improperly from any of the financial arrangements, or that the town council members
13 stood to benefit from the annexation or zoning developments.  Presumably, the town
14 council would be remiss in not taking such a pecuniary interest in the town's
15 development.  The fact that the town council also receives input outside of hearings or
16 that the council was predisposed, prior to the hearing, to recommend approval of the
17 annexation is also irrelevant to Plaintiff's claim.  A town cannot conduct the details and
18 entirety of its business through public meetings.  In sum, there is absolutely no evidence
19 of impartiality here.

20 Thus, like *Buckles*, Plaintiff has failed to come forth with genuine issues of
21 material fact in support of a claim of entitlement or a claim of impartial decision
22 making.  Either claim is fatal to Plaintiff's procedural due process claim.  Accordingly,
23 the Magistrate Judge recommends that the District Court, grant the Defendants' Motion
24 for Summary Judgment as to Plaintiff's Procedural Due Process claim.

25 **Takings Claim**

26 The Fifth Amendment of the United States Constitution provides in relevant part
27 that "`private property [shall not] be taken for public use, without just compensation.'"

28

-7-

*First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 307, 314 (1987). The United States Supreme Court has held that this provision does not prohibit the taking of private property, but instead places a condition on the government's exercise of that power. *Id.* Therefore, "government action that works a taking of property rights necessarily implicates the `constitutional obligation to pay just compensation.'" *Id.* at 315 (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)).

The typical taking occurs when the government undertakes to condemn property pursuant to its power of eminent domain. *Id.* at 316. However, where the government takes property without invoking formal eminent domain procedures, the property owner may bring an inverse condemnation action against the government to seek just compensation for the taking. *Id.* In the instant case, Plaintiffs' claim alleging an unlawful taking without due process of law under the 5th Amendment amounts to an inverse condemnation action.

To prevail in an inverse condemnation action, the plaintiff "must establish that the regulation or state action effects a taking, that it `goes too far,' and that he or she has not received just compensation." *Austin v. City and County of Honolulu*, 840 F.2d 678, 679 (9th Cir. 1988) (quoting *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340 (1986)). To establish that the state failed to offer just compensation, the plaintiff "must seek and be denied compensation through state procedures, including an inverse condemnation action in state court, provided those procedures are adequate." *Id.* at 680 (citing *Williamson County Regional Planning Comm'n. v. Hamilton Bank*, 473 U.S. 172, 195 (1985)).

Based upon the requirement that Plaintiff must seek and be denied compensation through state procedures before bringing a Fifth Amendment takings action in federal court, Defendant argues that Plaintiff's failure to file an inverse condemnation action in state court renders the federal action premature. In response, Plaintiff argues that he

has sought relief in State court in the form of challenging the validity of the annexation. Plaintiff asserts that the *Daniel's* case cited by Defendant does not specify what type of state procedure Plaintiff must pursue, only that they must attempt to use state procedures, and they have satisfied this requirement.

Plaintiffs' argument is contrary to Ninth Circuit case law applying the Supreme Court's decision in *Williamson*. *See Jones Intercable*, 80 F.3d 320 (affirming dismissal of takings claim on ripeness grounds because state inverse condemnation was still pending); *Austin*, 840 F.2d at 680 (affirming dismissal of takings claim because plaintiff failed to bring inverse condemnation action in state court); *Bateson v. Geisse*, 857 F.2d 1300, 1305-06 (9th Cir. 1988), overruled on other grounds, *Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996)(holding same). Moreover, Plaintiff offers no authority to support his contention that he need not bring an inverse condemnation action in state court prior to filing the federal action.

Although Plaintiff could argue that state procedures in this instance are inadequate, he has not done so. If Plaintiff did make such an argument, Plaintiff bears the burden of establishing that the state procedures are inadequate. *Austin*, 840 F.2d at 680. Moreover, the Ninth Circuit has stated that "state procedures are considered inadequate only when state law provides no post-deprivation remedy for a taking." *Dodd v. Hood River County*, 59 F.3d 852, 861 (9th Cir. 1995)(citations omitted). "*Williamson* does not require the plaintiff to bring a state court action where it would be futile under existing state law." *Levald*, 998 F.2d at 686. In *Levald*, the court determined that the plaintiff's federal takings claims was ripe even though he did not file a state inverse condemnation action. *Id*. However, the court so held because at that time, the forum state did not recognize actions for inverse condemnation based on regulatory takings. *Id*.

Arizona, on the other hand, recognizes inverse condemnation actions and has done so for many years. See *City of Yuma v. Lattie*, 117 Ariz. 280, 572 P.2d 108 (App.

1    1977); *County of Mohave v. Chamberlin*, 78 Ariz. 422, 281 P.2d 128 (1955). Indeed,
2    in 1955 the Arizona Supreme Court held that the just compensation provision in the
3    Arizona Constitution is self-executing to enable landowners to bring inverse
4    condemnation actions under that constitutional provision. *County of Mohave*, 78 Ariz.
5    at 430, 281 P.2d at 133. See also *City of Yuma*, 117 Ariz. at 283, 572 P.2d at 111 ("If
6    the city fails to institute an eminent domain action and private property is taken or
7    damaged for public use, [the takings clause] of the [Arizona] Constitution is
8    self-executing and the right to bring an inverse eminent domain action vests in the
9    property owner."); *Calmat v. State of Arizona*, 176 Ariz. 190, 859 P.2d 1323 (1993)
10   (holding that while the constitutional provision governing takings is self-executing,
11   certain statutes governing eminent domain actions also govern inverse condemnation
12   actions).

13         Consequently, unlike the plaintiff in *Levald*, the present Plaintiff has state
14   procedures available to him to seek compensation. Plaintiff has sought to invalidate the
15   ordinance, but this is not the equivalent of seeking just compensation. Because Plaintiff
16   has failed to file an inverse condemnation action in state court, his Fifth Amendment
17   takings claim is not ripe for this Court's consideration.

18         The purpose of the law is to compensate for a taking, so, unless an attempt to
19   receive compensation has been sought and denied by the state, no takings claim can be
20   sought in federal court. Thus, an attempt to invalidate the annexation, without seeking
21   just compensation, does not exhaust the claim.

22         Accordingly, the Magistrate Judge recommends that the District Court, grant the
23   Defendants' Motion for Summary Judgment as to Plaintiff's taking's claim.

24   **§ 1983 Claim**

25         The Ninth Circuit has recognized that "Congress enacted section 1983 pursuant
26   to its power under section 5 of the Fourteenth Amendment to adopt `appropriate
27   legislation' to enforce the Fourteenth Amendment." *Crumpton v. Gates*, 947 F.2d 1418,

28

-10-

1420 (9th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 351 n.3, 355 (1979) (Brennan, J., concurring); *Ngiraingas v. Sanchez*, 495 U.S. 182 (1990)). Accordingly, "[t]he Ninth Circuit has clearly stated that `a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983'" when suing state actors. *Jacobsen v. Marin Gen. Hosp.*, 963 F.Supp 866, 870 (N.D.Cal. 1997)(quoting *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992), cert. denied., 506 U.S. 1081 (1993)). See also *Monroe v. Pape*, 365 U.S. 167, 171 (1961)(recognizing that section 1983 makes available enforcement of the Fourteenth Amendment against state actors) overruled on other grounds by *Monell v. Department of Soc. Serv*. 436 U.S. 658 (1978); *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981) (public employee alleging employment discrimination as well as violations of his constitutional rights under the First, Fifth, and Fourteenth Amendments cannot sue directly under the Constitution where defendants are amenable to suit under section 1983) abrogated on other grounds by *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143 (1987); 1A M.Schwartz and J.Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees*, at 13 (Section 1983 "is essentially a procedural or remedial device through which a party may seek relief for the deprivation of a constitutional... right...Thus, in order to state a claim under section 1983, the pleader must allege an independent substantive basis, whether grounded in a federal constitutional or statutory right"(citation omitted)).

Indeed, the Ninth Circuit has specifically rejected the contention that a plaintiff may state a takings claim against state actors directly under the Fifth Amendment. *Azul-Pacifico*, 973 F.2d at 705. Instead, the plaintiff must utilize section 1983. *Id.* See also, *Golden Gate Hotel Assoc. v. City and County of San Francisco*, 18 F.3d 1482, 1486 (9th Cir. 1994)(*Azul-Pacifico* "established that all claims of unjust taking had to be brought pursuant to section 1983"). Accordingly, Count One, which alleges a violation of the Fifth Amendment Takings Clause directly under the Constitution must be dismissed. Not only is the claim premature, but Plaintiffs have "no cause of action

-11-

1 directly under the Constitution" for their takings claim. *Azul-Pacifico*, 973 F.2d at 705. Likewise, although a takings claim is properly brought pursuant to section 1983, Plaintiffs' claim is not ripe for review and for this reason Count Two should be dismissed. Therefore, regardless of whether Plaintiffs are able to state a claim under section 1983 or directly under the Constitution, the takings claim is not ripe for this Court's consideration and summary judgment should be granted on both Counts One and Two.

**Substantive Due Process Claim**

In *Buckles*, *supra*, the Ninth Circuit dismissed a substantive due process claim finding that a plaintiff is precluded from asserting a substantive due process claim instead of, or in addition to, a takings claim, finding that they were required to "analyze the Buckles land use claim under the "explicit textual source of constitutional protection," the Takings Clause, "not the more generalized notion of 'substantive due process."

As to Defendant's argument that Plaintiff has no cause of action under the substantive due process clause, Defendant is correct that the law bars Plaintiff from couching his takings claim as a substantive due process claim. See *Macri v. King County*, 126 F.3d. 1125 (9th Cir. 1997)); *Armendariz*, 75 F.3d at 1320-1326. The Ninth Circuit has recognized that "permitting a plaintiff to bring a substantive due process claim whenever his claims under other constitutional provisions [such as the Takings Clause] are unsuccessful, ... gives the plaintiff, under substantive due process analysis, protection which the [C]onstitution does not afford." *Armendariz*, 75 F.3d at 1325.

Accordingly, the Magistrate Judge recommends that the District Court, grant the Defendants' Motion for Summary Judgment as to Plaintiff's substantive due process claim

.

## CONCLUSION

This Court recommends that Defendants' Motion for Summary Judgment (Document #14) be GRANTED.

Pursuant to Title 28 U.S.C. § 636(b), any party may serve and file written objections within 10 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: CIV 04-680-TUC-DCB.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the attorneys for the Plaintiff and for the Defendants.

DATED this 26th day of January, 2006.

_____
Bernardo P. Velasco
United States Magistrate Judge